**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LOUISE, W.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 19 cv 7734** |
| **v.** ) | |
| ) | **Magistrate Judge Jeffrey I. Cummings** |
| **KILOLO KIJAKAZI, Acting** ) | |
| **Commissioner of Social Security,[1]** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Louise W. ("Claimant") brings a motion to reverse the final decision of the

Commissioner of Social Security (the "Commissioner") to deny her claims for Disability

Insurance Benefits ("DIBs") and Supplemental Security Income ("SSI") benefits.  The

Commissioner filed a response seeking to uphold its decision to deny benefits and seeking

summary judgment in its favor.  The parties have consented to the jurisdiction of the United

States Magistrate Judge pursuant to 28 U.S.C. §636(c).  This Court has jurisdiction to hear this

matter pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).  For the reasons stated below, Claimant's

motion to reverse the Commissioner's final decision, (Dckt. #15), is granted, and the

Commissioner's motion for summary judgment, (Dckt. #24), is denied.

**I.      BACKGROUND**

**A.      Procedural History**

On June 7, 2016, Claimant filed for DIBs and SSI, alleging disability beginning

November 19, 2015.  (Administrative Record ("R.") 13).  Claimant's application was denied

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court
refers to Claimant only by her first name and the first initial of her last name.  Acting Commissioner of
Social Security Kilolo Kijakazi has also been substituted as the named defendant.  Fed.R.Civ.P. 25(d).

initially and upon reconsideration.  (R. 13).  Claimant filed a timely request for a hearing, which

was held on June 15, 2018, before an ALJ.  (R. 13, 27).  On October 2, 2018, the ALJ issued a

written decision denying Claimant's application for benefits.  (R. 13-21).  Claimant filed a timely

request for review with the Appeals Council.  On September 24, 2019, the Appeals Council

denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the

Commissioner.  (R. 1-3).  This action followed.

###### B.        The Social Security Administration Standard

To qualify for disability benefits, a claimant must demonstrate that she is disabled,

meaning she cannot "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death, or which

has lasted or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. §423(d)(1)(A).  Gainful activity is defined as "the kind of work usually done for pay or

profit, whether or not a profit is realized."  20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability

claims.  20 C.F.R. §404.1520.  The SSA first considers whether the claimant has engaged in

substantial gainful activity during the claimed period of disability.  20 C.F.R.

§404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant has one or more

medically determinable physical or mental impairments. 20 C.F.R. §404.1521.  An impairment

"must result from anatomical, physiological, or psychological abnormalities that can be shown

by medically acceptable clinical and laboratory diagnostic techniques."  *Id.*  In other words, a

physical or mental impairment "must be established by objective medical evidence from an

acceptable medical source."  *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at

*2 (N.D.Ind. Oct. 22, 2019).  If a claimant establishes that she has one or more physical or

mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month durational requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered disabled and no further analysis is required. If a listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), meaning her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If she cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given her RFC, age, education, and work experience. If such jobs exist, the individual is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

### C.     The Evidence Presented to the ALJ

Claimant seeks disability benefits for limitations stemming from diabetes, knee problems, and high blood pressure. Because the Court's decision relates only to Claimant's knee problems and sitting limitations, it will limit the discussion of the evidence accordingly.

### 1.        Evidence from Agency Physicians

On September 8, 2016, Claimant was examined by consulting physician Fauzia A. Rana, M.D., who noted there were no medical records available for review.  (R. 631).  Dr. Rana's evaluation included a left knee x-ray, range of motion testing, and a physical examination.  (R. 631-40).  The x-ray revealed mild degenerative arthritic changes with some narrowing of the medial and patellofemoral joint spaces and small osteophytes in the tibial articular margins.  (R. 640).  Dr. Rana noted Claimant was "grossly obese."  (R. 632).  Her findings included some deficits in range of motion in Claimant's knees and hips, but her muscle strength was normal and she had no edema.  (R. 633).  The examination also revealed that Claimant had mild difficulty tandem walking; had moderate difficulty squatting and arising; and was unable to walk on her toes or heels, or hop on one leg.  (*Id.*).  Dr. Rana opined that Claimant was able to sit, stand, lift, carry, speak, and hear without difficulty but had "some difficulty in prolonged walking due to morbid obesity and weakness in her knees."  (R. 634).  Finally, Dr. Rana stated that Claimant did not use an ambulatory aid that day and could "slowly walk more than 50 feet without assistance."  (*Id.*).

State agency medical consultants Marion Panepinto, M.D., and Calixto Aquino, M.D., performed an assessment of Claimant on September 20, 2016, at the initial level of adjudication, and January 10, 2017, at the reconsideration level, respectively.  (R. 68-75, 84-93).  Dr. Panepinto opined that Claimant could lift and carry twenty pounds occasionally and ten pounds frequently; she could stand/walk (with normal breaks) and sit (with normal breaks) six hours in an eight-hour workday; and could perform all of the postural limitations on an occasional basis.  (R. 72-73).  In determining these limitations, Dr. Panepinto noted Claimant's complaint of right knee pain, and that she is obese with a BMI of 47.5, her flexion is limited to 115 degrees,

4

imaging revealed mild arthritis with some narrowing of the joint space, and her gait is unassisted yet wide-based and waddling. (R. 73). At the reconsideration level, Dr. Aquino's assessment of Claimant's work capabilities remained the same as Dr. Panepinto's opinion. (*compare* R. 88-89 *with* R. 72-73.)

### 2.    Evidence from Claimant's Testimony

Claimant appeared with counsel at the June 15, 2018 hearing before the ALJ. (R. 27, 29). At the time of the hearing, Claimant was sixty-two years old and living alone. (R. 34, 52). She lives in a senior building and cooks for herself. (R. 53-54). Claimant also testified that she attended a year and a half of college but did not graduate. (R. 54). Claimant's past work included working as a school custodian in 2015 and, prior to that, working in customer service at a bank from approximately 1990 to 2009. (R. 39). She also worked part-time at Mars making candy. (R. 41).

Claimant arrived at the hearing by bus and walked over with her cane from the bus stop. (R. 36). She testified that she uses the cane because of the pressure on her knees and because her knees sometimes buckle; she has fallen in the past. (*Id.*). She can walk for thirty minutes before she needs to rest. (R. 36, 38).

Claimant has arthritis in her knees, (R. 36), and neuropathy in her hands and feet. (R. 37). She stated that if she stands for too long, her legs swell and she has to sit down and elevate them. (*Id.*). Claimant expressed that the neuropathy in her hands makes it too painful to type and she described her fingers and feet as feeling like they are "on fire." (R. 56).

Claimant also testified that she suffers from diabetes, has been insulin dependent since 2009, and takes Metformin. (R. 37-38). She was diagnosed with high blood pressure because of the diabetes and placed on Enalapril. (R. 52). Claimant's weight also affects her knees. (R. 38).

Three weeks prior to the hearing (end of May 2018), Claimant underwent "sleeve surgery" (a weight loss surgery) where a band is placed to decrease the size of the stomach. (R. 43). Around the same time, she was diagnosed with atrial fibrillation ("AFib") and placed on blood thinners. (R. 44-45). Claimant stated that her other medications include Acetaminophen, Docusate, Oxycodone, Tramadol, Enalapril, Metformin, and insulin. (R. 51-52).

Claimant testified that although she does not have "too much" difficulty sitting, she cannot sit for too long because knees lock up and get stiff. (R. 59). She stated that she can sit for thirty minutes before needing to stand up. (*Id.*). She further testified that she has "to elevate [her] feet all the way to like up close to [her] heart level so [her] ankles and [her] feet don't swell." (R. 60).

### 3. Evidence from Vocational Expert's Testimony

The vocational expert ("VE") testified in pertinent part as follows. The VE first described Claimant's past work as a customer service representative (a skilled occupation with a specific vocational preparation ("SVP") of five, sedentary physical demand and as performed); and as a cleaner (an unskilled occupation with an SVP of two, medium physical demand and as performed). (R. 61). The ALJ then asked the VE the following hypothetical question:

> Assume an individual of advanced age, . . . approaching retirement age, and with a greater than high school education and the past work that you outlined, the customer service and the cleaner job. One is skilled. The other is unskilled. One is sedentary. The other is medium. If the claimant were limited to sedentary work as defined in the regulation such that she could lift and carry no more than ten pounds occasionally and ten pounds frequently; and can be on her feet standing, walking about two hours in an eight hour work day with normal rest periods; and sit about six hours with normal rest periods. She would be unable to work at heights, climb ladders, or frequently negotiate stairs; only occasionally balance, stoop, crouch, kneel, or crawl; and would be unable to work in places where she would have to walk over uneven terrain or uneven surfaces. She should avoid concentrated exposure – she should avoid operation of moving or dangerous machinery. Would she be able to do the work or any of the work she did in the past?

(R. 61-62). The VE testified that Claimant could only perform her past work as a customer service representative. (R. 62). Further, the individual would need to be on task eighty-five percent of the workday – if she were off task more than fifteen percent, she would be unable to do the work. (*Id.*). When questioned by Claimant's counsel, the VE testified that if the individual had to elevate her legs to heart level, she would be unable to do the customer service representative work. (R. 63).

### D.    The ALJ's decision

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. The ALJ found that Claimant met the insured status requirements through September 30, 2017. (R. 15). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of November 19, 2015. (R. 16). At step two, the ALJ determined that Claimant suffered from the severe impairments of diabetes mellitus, obesity, atrial fibrillation, and a degenerative back condition. (*Id.*). At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. (*Id.*). *See* 20 C.F.R. Part 404, Subpart P, App. 1.

Before turning to step four, the ALJ determined that Claimant had the residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can lift and carry 10 pounds occasionally and frequently, can be on her feet standing and walking about 2 hours in an 8 hour workday, and can sit about 6 hours in an 8 hour workday with normal rest periods. She is unable to work at heights, climb ladders, or frequently negotiate stairs. She may only occasionally balance, stoop, crouch, kneel, or crawl. She should not ambulate on uneven surfaces. She should avoid operation of moving or dangerous machinery.

(R. 17).  At step four, the ALJ determined that Claimant was capable of performing her past relevant work as a customer service representative.  (R. 20).  As such, the ALJ found that Claimant was not under a disability from her alleged onset date through the date of his decision. (*Id.*).

## II.    STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court.  Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted).  The Commissioner's decision must also be based on the proper legal criteria and free from legal error.  *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, by making independent symptom evaluations, or by otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions.  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review."  *Scott v. Barnhart*, 297 F.3d

589, 595 (7th Cir. 2002).  Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence.  *Elder*, 529 F.3d at 413 (citation omitted).

## III.    ANALYSIS

Claimant argues that the ALJ incorrectly assessed her RFC because the ALJ did not properly consider her sitting limitations.  Because this argument has merit, the Court finds that a remand to the Social Security Administration is warranted, and it will not address Claimant's remaining arguments.  *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments.").  The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and she is free to assert them on remand.

### A.    The ALJ's failure to build a logical bridge between the evidence and his RFC determination regarding Claimant's ability to sit requires remand.

Claimant asserts that the ALJ did not properly consider her sitting limitations and failed to explain his finding that she had the RFC to sit for six hours in an eight-hour day.  This finding, in turn, led the ALJ to conclude that Claimant had the RFC to perform sedentary work, which "requires sitting for 6 hours and standing and/or walking for 2 hours during an 8-hour workday." *Collins v. Astrue*, 324 Fed.Appx. 516, 517 (7th Cir. 2009) (citing 20 C.F.R. §404.1567(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251 (Jan. 1. 1983)).  The essential question here is whether the ALJ's finding that Claimant had the RFC to perform sedentary work is supported by substantial evidence.

As Claimant asserts, an ALJ's "'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts.'" *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005), *quoting* SSR 96-8P at *7. The ALJ did not explicitly identify the evidence that he relied on to conclude that Claimant could sit for six hours in an eight-hour day. Arguably, "this omission in itself is sufficient to warrant reversal of the ALJ's decision." *Id.* Nonetheless, the ALJ did reference and give "some weight" to the opinions of Drs. Panepinto and Aquino (who found that Claimant could sit for six hours in an eight-hour day) and of Dr. Rana (who found that Claimant was able to sit "without difficulty"). (R. 19-20). Even presuming that the ALJ relied on these opinions to support his RFC finding regarding Claimant's ability to sit, remand is warranted for the following reasons.

First, the ALJ gave the opinions of these three physicians only "some weight" because they "were formed without the benefit of reviewing the treatment records submitted by the claimant at the hearing level and prior to the development of the claimant's atrial fibrillation." (R. 20, 19). Based on these recent treatment records, the ALJ rejected the physicians' findings that Claimant could: (1) stand or walk for six hours in an eight-hour day; (2) occasionally lift or carry twenty pounds; and (3) perform "light work" (which requires the ability to stand and/or walk for about six hours in an eight-hour day and the ability to lift up to twenty pounds).[2] Instead, the ALJ concluded that Claimant was far more limited in her capabilities and found that she had the RFC to occasionally lift and carry only ten pounds and that she could stand and/or walk for only about two hours in an eight-hour day. (R. 17). However, the ALJ also found – consistent with the physicians' opinions – that Claimant was able to sit for six hours out of an eight-hour day. (*Id.*).

The ALJ did not explain *why* the treatment records Claimant produced at the hearing caused him to discount the physicians' opinions with respect to Claimant's ability to lift, carry,

_____

[2] *See* SSR-83-10, 1983 WL 31251, at *5-6 (defining "light work").

stand, and walk. Nor did the ALJ explain why these same recent treatment records supported his RFC regarding Claimant's ability to sit for six hours in an eight-hour day. The failure to articulate the basis for the RFC regarding Claimant's ability to sit is particularly problematic because the recent treatment records contain findings that could impact Claimant's ability to sit for an extended period of time.

In particular, Claimant's October 18, 2016 lumbar spine x-ray – which postdated the opinions of Drs. Rana and Panepinto[3] – showed "multilevel degenerative changes, most pronounced at L4-5," "Grade 1 anterolisthesis of L4 on L5," "moderate to severe facet arthropathy from L3-4 through L5-S1," and "mild degenerative changes in the sacroiliac joints." (R. 688). As such, this October 2016 x-ray appears to reflect a worsening of Claimant's degenerative back condition, which the ALJ determined was a severe impairment. (R. 16). As Claimant asserts, facet joint disease can create back pain which, in turn, can be exacerbated by sitting for prolonged periods of time. *See, e.g., Wiley v. United of Omaha Life Insurance Co.*, No. 5:16-CV-1936-CLS, 2019 WL 2172708, at *15 n.79 (N.D.Ala. May 20, 2019); *Millburg v. Colvin*, No. 15-cv-3298, 2017 WL 1237970, at *21-22 (C.D.Ill. Jan. 20, 2017); *Demace v. Astrue*, No. 3:11-CV-01960, 2013 WL 1775055, at *9 (M.D.Pa. Apr. 25, 2013). Accordingly, the worsening of the impairment could have impacted the sitting limitations in Claimant's RFC.

Claimant's recent medical records also documented that she has had localized edema from June 2017 through the present. (R. 712, 725, 748, 752). Localized edema can cause a person's feet to swell unless they are elevated. *See Duncan v. Saul*, No. 3:19-CV-1333-S-BH, 2020 WL 6120472, at *10 (N.D.Tex. Sept. 10, 2020), *report and recommendation adopted*, No. 3:19-CV-1333-S-BH, 2020 WL 6064359 (N.D.Tex. Oct. 14, 2020); Dckt. #15 at 12 & nn. 7-8.

---

[3] Likewise, it does not appear that Dr. Aquino – who issued his opinion on reconsideration on January 10, 2017 – considered the findings from the October 2016 x-ray. (*See* R. 87-90).

Although the ALJ discussed the medical evidence indicating that Claimant had trace edema in her feet in 2016 and minimized its significance, (R. 18), he did not mention that she was subsequently diagnosed with localized edema. This diagnosis potentially corroborates Claimant's testimony regarding her need to elevate her feet up to her heart level so that her feet and ankles do not swell. (R. 60). The ALJ erred by failing to account for Claimant's localized edema before discounting her testimony that she needs to elevate her feet. *See, e.g., Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) ("ALJs are not permitted to cherry-pick evidence from the record to support their conclusions without engaging with the evidence that weighs against their findings."); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (internal quotation marks omitted).

Second, although the ALJ considered how Claimant's morbid obesity[4] impacted her ability to lift, stand, and walk in his RFC determination, (R. 19), he failed to discuss how her obesity impacted her ability sit and to perform sedentary work. This was an error. As the Seventh Circuit has noted, morbid obesity "might make it difficult for [a claimant] to sit for long periods of time, as sedentary work normally requires" and "the likely difficulties that morbidly obese persons . . . face even in doing sedentary work are sufficiently obvious." *Browning*, 766 F.3d at 707; *Michael W. v. Kijakazi*, No. 21-CV-1511, 2022 WL 3684628, at *2-3 (N.D.Ill. Aug. 25, 2022) (citing *Browning* and remanding ALJ's decision "because it lacks an adequate discussion of Plaintiff's sitting abilities (or lack thereof)" in light of her obesity); *Stevens v. Colvin*, No. 14 CV 201, 2016 WL 1535156, at *4-5 (N.D.Ill. Apr. 15, 2016) (citing *Browning*

---

[4] During the relevant time, Claimant's BMI ranged from 45.36 to 50.54. (R. 19). Persons with a BMI of over 40 are considered to be morbidly obese. *See Browning v. Colvin*, 766 F.3d 702, 704 (7th Cir. 2014).

and remanding for the ALJ to analyze how claimant's extreme obesity interacted with her other impairments and how that interaction factored into her RFC); *Mitchell v. Colvin*, No. 13 CV 50209, 2015 WL 5227411, at *4 (N.D.Ill. Sept. 8, 2015) (citing *Browning*). If the ALJ thought Claimant's obesity had no impact on her ability to sit and perform sedentary work, "he should have explained how he reached that conclusion." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012).

Third, the ALJ mentioned Claimant's testimony that she was only able to sit for thirty minutes, (R. 17), but he did not explain why he decided not to credit her testimony regarding this limitation. The ALJ had a duty to explain why he rejected Claimant's testimony on this point. *See, e.g., Plessinger*, 900 F.3d at 915. The Court further notes that the ALJ was not at liberty to reject Claimant's testimony regarding her sitting limitation "solely because there is no objective evidence supporting it." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

For these reasons, the Court cannot uphold the ALJ's finding that Claimant was able to perform sedentary work because he failed to "build an accurate and logical bridge between the evidence and the result." *Sarachet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012) (remanding where the ALJ's "opinion failed to build a bridge between the medical evidence . . . and the conclusion that she is able to work full time in a sedentary occupation"); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about [claimant's] physical capabilities."); *Briscoe*, 425 F.3d at 352 (where the ALJ "did not explain" how he arrived at his conclusions regarding claimant's RFC, that "omission in itself is sufficient to warrant reversal of the ALJ's decision.").[5]

---

[5] Contrary to the Commissioner's argument (Dckt. #24 at 3-4), the fact that the ALJ formulated an RFC that was more restrictive than the limitations found by the three physicians did not relieve the ALJ of the

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #15), is granted and the Commissioner's motion for summary judgment, (Dckt. #24), is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.


**ENTERED:   September 8, 2022**

**Jeffrey I. Cummings**
**United States Magistrate Judge**

---

obligation to build an accurate and logical bridge between the evidence and the result. Unlike here, the ALJs in the cases cited by the Commissioner offered an adequate explanation for how they formulated the RFCs in question.